**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IRSHAD LEARNING CENTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 C 2168** |
| | ) | |
| **COUNTY OF DUPAGE, and ROBERT J.** | ) | **Judge Rebecca R. Pallmeyer** |
| **SCHILLERSTROM, ROBERT J. KARTHOLL,** | ) | |
| **JR., JOHN HAKIM, BARRY KETTER,** | ) | |
| **TOM LAZ, MICHAEL LOFTUS,** | ) | |
| **JIM MCNAMARA, JACK L. MURPHY,** | ) | |
| **JOHN CURRAN, DIRK ENGER, PAUL** | ) | |
| **FICHTNER, RITA GONZALEZ,** | ) | |
| **J.R. MCBRIDE, MICHAEL MCMAHON,** | ) | |
| **DEBRA OLSON, PATRICK O'SHEA,** | ) | |
| **DONALD PUCHALSKI, JIM ZAY,** | ) | |
| **in their individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Irshad Learning Center, a Muslim religious and educational group, seeks a conditional use permit in order to use property in unincorporated DuPage County for religious services and educational purposes. DuPage officials have denied the request. In this lawsuit, Irshad alleges that the denial violates Irshad's rights under the United States Constitution, the Illinois Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants–the County of DuPage; County Board Chairman Robert Schillerstrom; Zoning Board of Appeals members Robert J. Kartholl, Jr., John Hakim, Barry A. Ketter, Tom Laz, Michael Loftus, Jim McNamara, and Jack L. Murphy; and County Board members John Curran, Dirk Enger, Paul Fichtner, Rita Gonzalez, J.R. McBride, Michael McMahon, Debra Olson, Patrick O'Shea, Donald Puchalski, and Jim Zay–move to dismiss Plaintiff's complaint, to strike certain allegations and claims, and to dismiss Defendants in their individual capacities. The court grants Defendants' motion to dismiss the individual capacity claims, dismisses Counts IV and XI for failure to state a claim, and strikes Count VI. Defendants'

motion is otherwise denied.

<u>**BACKGROUND**</u>

Irshad Learning Center ("Irshad" or "Plaintiff") is a 75-member religious organization. Irshad currently conducts a Thursday evening prayer service at College of DuPage facilities and a Saturday afternoon youth education session at the Islamic Foundation School in Villa Park, Illinois. (Compl. ¶¶ 36-37.) In March 2008, Irshad purchased property at 25W030 75th Street, in unincorporated DuPage County, for use as a place of religious worship and education. (*Id.* ¶¶ 5, 36-38.)

Plaintiff's property consists of 2.9 acres, including a single-family residence that was converted by its previous owner into a private school. (*Id.* ¶ 42.) The previous owner operated a private school on the premises from 1994 to 2008, known as the Balkwill School. (*Id.*) In 2005, the County Board granted a conditional use permit for the property allowing the operation of a private school with up to 65 students, aged three to the sixth grade, and five staff members. (*Id.* ¶ 43; Zoning Ordinance 5146-05, Ex. D. to Mot. to Dismiss [hereinafter "Balkwill Zoning Ordinance"] at 2, 6.) It is unclear whether the Balkwill School had received a conditional use permit prior to 2005, although the 2005 ordinance references a 2001 public hearing on a previous zoning ordinance. (Balkwill Zoning Ordinance ¶ 1.) The Balkwill School's hours of operation were limited by the conditional use ordinance from 7:30 a.m. to 12:30 p.m. Monday to Friday. (*Id.* at 6.) The Balkwill School site included seven "required" parking spaces, (*id.* ¶ 7), "in the front of the home," (Compl. ¶ 44)–apparently in the driveway area near the home's front door, although it is not precisely clear from the record where these were located. Neither party disputes that Irshad may use the property under the exact same conditions that the DuPage County Board approved for the Balkwill School. (*See* Balkwill Zoning Ordinance [listing conditions upon which the conditional use was approved and including a site plan of the property to which the Balkwill School was required to adhere].)

Zoning procedures in DuPage County involve four different entities: the Department of

Economic Development and Planning ("Planning Department"); the Zoning Board of Appeals[1] ("ZBA"); the County Development Committee ("CDC") of the County Board; and the County Board. Those seeking zoning relief must first file their application with the Zoning Board of Appeals.[2] Zoning staff may assist an applicant in completing his/her application, and will advise applicants of the "requirements and standards for zoning relief." Zoning Procedures at 1. The ZBA then schedules a public hearing on the proposed application at which the petitioner or an agent must present testimony concerning the proposed zoning relief. *Id.* at 4. The public hearing must begin no later than sixty days after the application is submitted, and must be concluded no later than 120 days after the application is submitted, with some enumerated exceptions. DuPage County Code 37-1415(A). Questions may be directed at petitioner from zoning staff, ZBA members, and members of the public. Zoning Procedures at 4. The ZBA then makes a recommendation on the application to the County Development Committee, and the County Development Committee makes a recommendation to the County Board, which renders a final decision. *Id.* The CDC may also opt to remand a petition to the ZBA "for reconsideration of its vote where significant new information has been made available." *Id.* at 13.

Plaintiff first filed a conditional use application for use of the property as a "learning center" on August 19, 2008, requesting a variance to allow for parking in the front yard and side yard of the property. (Compl. ¶ 67.) The County Zoning Administrator, a member of the Planning Department, met with Plaintiff and suggested Plaintiff withdraw its application as a "learning center" and re-file

---

[1] Although officially titled the "Zoning Board of Appeals," the ZBA handles both original zoning applications as well as appeals.

[2] Neither side has provided a comprehensive outline of the zoning review procedures. Defendants include portions of the DuPage County zoning ordinance in the record as Exhibit C to their motion to dismiss, but the court has found additional sources, including the Zoning Procedures document, helpful in explaining DuPage County's zoning procedures, at least as they exist today. *See* "DuPage County Zoning Board of Appeals Application and Procedure," available online at http://www.co.dupage.il.us/building/zbaApplication.pdf (visited March 22, 2011) (hereinafter "Zoning Procedures").

as a "religious institution," and that it remove the variance request. (*Id.* ¶¶ 68, 69.) Plaintiff did so, and re-filed on December 11, 2008. (*Id.* ¶ 69.) The application requested a permit that would allow use of the property for religious services by 100 individuals, 27 parking spaces, and 12 additional parking spaces that could be constructed if deemed necessary. (*Id.* ¶ 70.) It is not entirely clear from the record, but it appears the additional parking spaces would be in the area near the front of the home (rather than the front yard), in the same area where the Balkwill School maintained its parking spaces and driveway, which would apparently negate the need for a variance. (*Id.* ¶¶ 44,107(a).) Plaintiff planned to continue using the existing structure, which had already been found compliant with all relevant codes. (*Id.* ¶¶ 70,71.) Plaintiff held "open door" meetings with neighbors at the property on November 18, 2008 and January 13, 2009; it is unclear what transpired at those meetings or whether any record of them exists. (*Id.* ¶ 73.)

The DuPage County Zoning Board of Appeals held its first public hearing on the conditional use application on February 26, 2009. (*Id.* ¶ 74.) Dan Wallace, a representative of neighbors objecting to the application, stated his concern that Plaintiff would grow in size, and that Plaintiff would need to expand the property's structure in the future. (*Id.* ¶¶ 76-77.) ZBA member John Hakim asked whether "any animal sacrifices" would take place at the property. (*Id.* ¶ 75.) The ZBA continued its meeting until March 12, 2009, to allow Plaintiff to respond to the concerns raised at the initial meeting. (*Id.* ¶ 79.) Plaintiff did respond to the objections, submitting, prior to the March 12 meeting, letters from the owners of facilities Plaintiff had used in the past, which commended the organization, noted that there had been no complaints, and offered to answer any additional questions. (*Id.* ¶¶ 80, 82.) Plaintiff also agreed to a 10:30 p.m. end time for any worship services. (*Id.* ¶ 84.) The ZBA continued the hearing until May 14, 2009, at which time the ZBA held its final public hearing on Plaintiff's application. (*Id.* ¶¶ 87-89.) Plaintiff does not offer details of this meeting, instead alleging only that "objectors continued to emphasize Speculative Use." (*Id.* ¶ 88.) On June 4, 2009, the ZBA unanimously recommended denial of the application to the County

Board. (*Id.* ¶ 90.) ZBA Chairman Kartholl observed (contrary to the Zoning Administrator's earlier recommendation to Plaintiff) that the application should have been made as a "learning center" rather than as a "religious institution." (*Id.* ¶ 93.)

The County Development Committee met on July 7, 2009, and voted unanimously to remand the application to the ZBA to "issue findings in accordance with the petition that has been filed by the petitioner and include adopted rationale and explanation for findings as they have been submitted." (*Id.* ¶ 95.) At the remand hearing on August 6, 2009, ZBA Chairman Kartholl explained that the CDC "remanded the case to us so that the board could clarify its findings of fact in the matter." (*Id.* ¶¶ 96, 97.) The ZBA continued that hearing until September 10, 2009, at which time the ZBA again unanimously voted to recommend denial of the application. (*Id.* ¶¶ 97, 98.) At that meeting, Kartholl said that Plaintiff did not present "any sort of live testimony" during the prior hearings, which Plaintiff contends is "contrary to the clear record before the ZBA." (*Id.* ¶ 100.) The ZBA included in its findings of fact that 250 people would attend religious services, and that 100 parking spaces would be needed, estimates that Plaintiff alleges do not appear anywhere in the application. (*Id.* ¶ 103.)

The County Development Committee met again on October 20, 2009, and voted unanimously to approve an amended application that included twelve additional conditions, including restricting parking to 27 spaces, and requiring that worship services end at 10:30 p.m. (*Id.* ¶ 104.) The DuPage County Board tabled consideration of the application at its October 27, 2009 meeting. (*Id.* ¶ 106.) In an informal meeting on November 5, 2009 hosted by CDC chairman Anthony Michelassi—which was not a CDC or ZBA meeting—Plaintiff discussed the application with several neighbors, with Michelassi, and with Jim Healy, County Board representative from Naperville, who recommended additional conditions. (*Id.* ¶ 107.) These recommendations included limiting hours of operation to between 6 a.m. and 10:30 p.m. and requiring all exterior lighting to be turned off by 10:45 p.m. (*Id.*) On November 10, 2009, the County Board voted 15-2 to remand the

amended application to the ZBA. (*Id.* ¶ 112.) Such a remand, Plaintiff alleges, "was unprecedented by the County Board for conditional use permits," and was done after the County Board declined to vote, either for approval or denial, on either the original application or the application as amended with the conditions recommended at the November 5 meeting. (*Id.* ¶ 113.)

On November 12, 2009, the U.S. Attorney's Office for the Southern District of New York sought asset forfeiture against the Alavi Foundation, a New York-based not-for-profit "devoted to the promotion and support of Islamic culture and Persian language," because of its alleged association with the Iranian government. (*Id.* ¶ 114, 117.)[3] The Alavi Foundation had provided partial financing to Plaintiff to assist its purchase of the property. (*Id.* ¶ 116.) Plaintiff notes that the Foundation has also provided funding to organizations including Doctors Without Borders, Mercy Corps, Harvard Law School, and Columbia University. (*Id.* ¶ 115.)

On December 7, 2009, the ZBA held a "special public hearing" on remand from the County Board. (*Id.* ¶ 121.) One woman testified that the application should be denied because of Plaintiff's link to the Alavi Foundation.[4] (*Id.* ¶ 123.) The ZBA did not discuss the recommendations from the November 5 meeting with the CDC chair, which was the stated purpose of the County Board remand. (*Id.* ¶¶ 109, 112, 122.) Chairman Kartholl said that the "ZBA record on this matter is in

---

[3]     Plaintiff's complaint does not spell out the details, however, according to an FBI press release, the U.S. Attorney alleged that Alavi's actions violated the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and executive orders barring certain financial transactions with the Iranian government. *See* "Manhattan U.S. Attorney Files Civil Action Seeking Forfeiture of Alavi Foundation's Interest in Fifth Avenue Office Tower Controlled by Iran," online at http://www.fbi.gov/newyork/press-releases/2009/nyfo111209a.htm (visited March 22, 2011).

[4]     Plaintiff does not explain how this news reached the local community, but the court has determined that the *Chicago Sun-Times* and *Chicago Tribune* ran articles in November 2009 discussing the tie between Irshad Learning Center and the Alavi Foundation. *See* Susan Frick Carlman, "Group Accused of Iran Ties Has Stake in Islamic Center: Foundation Holds Mortgage on Site of Planned Facility," *Chicago Sun-Times* (Nov. 15, 2009); Gerry Smith, "Islamic Center Foes Try New Tack: To Thwart Planned Move, Critics Cite Possible Iran Link," *Chicago Tribune* (Nov. 22, 2009).

the can" and that deliberations had already been concluded prior to the ZBA's September 10 vote. (*Id.* ¶ 122.)  Once again, the ZBA voted unanimously to recommend denial of the application.  (*Id.* ¶ 125.)

On December 15, 2009, the CDC held a meeting to consider the application.  (*Id.* ¶ 126.) One individual testified regarding the link between Plaintiff and the Alavi Foundation.  (*Id.* ¶ 127.) The CDC voted 3-1 to recommend that the County Board approve the application.  (*Id.* ¶ 128.)  Two members abstained from the vote ostensibly "because this was the same as the recommendation . . . for which they had already voted in favor."  (*Id.*)  One member who had previously voted to recommend approval of the application now voted against it.  (*Id.*)

The DuPage County Board scheduled a final vote on the application for January 12, 2010. Prior to that meeting, a Naperville resident e-mailed all Board members regarding Plaintiff's link to the Alavi Foundation, and warning: "You MUST NOT GRANT APPROVAL on this conditional use of residential property to [Plaintiff], UNTIL YOU HAVE COMPLETE AND ABSOLUTE clearance from our local FBI and Homeland Security.  Again . . . as President Obama said last week . . . PLEASE connect the dots."  (*Id.* ¶ 132.)  The "Naperville Tea Patriots"[5] posted information on their website regarding Plaintiff's link to the Alavi Foundation.  In addition, the Naperville Tea Patriots posted a letter dated January 4, 2010, addressed to Naperville City Council members, suggesting that the conditional use application was a form of "Stealth Jihad" and that Plaintiff intended to spread "Radical-Jihadist Islamic Ideology."  (*Id.* ¶¶ 133, 134.)  The Tea Patriots asserted that Plaintiff was "synonymous with Alavi Foundation" and "synonymous with or connected to a variety of national and international Islamic and terrorist organizations."  (*Id.* ¶ 134.)

Individuals from the Naperville Tea Patriots and Act! for America protested outside of the

---

[5]      Plaintiff does not offer a description of the Naperville Tea Patriots, but it appears they are a local chapter of the national Tea Party Patriots.  *See* http://napervilleteapatriots.com.  "TEA Party Patriots believe in less government involvement in our lives, less government spending, free enterprise, and more individual freedom and responsibility."  *Id.*

January 12 County Board meeting. (*Id.* ¶ 139.) A representative from Act! for America[6] testified at the meeting that Plaintiff was a terrorist "front group." (*Id.* ¶ 140.) Ultimately, the County Board voted 10-7 against the application. (*Id.* ¶ 141.) Two County Board and CDC members who had previously voted for the application in CDC meetings now voted against it. (*Id.*)

Plaintiff brings eleven counts against the County of DuPage and individual members of the ZBA and County Board. Count I alleges that the County has violated the equal-terms and nondiscrimination provisions of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc(2)(b)(1)-(2). (*Id.* ¶¶ 147-152.) Count II alleges that the County violated the substantial burden provision of RLUIPA, 42 U.S.C. § 2000cc(2)(a). (*Id.* ¶¶ 153-59.) Count III, brought pursuant to 42 U.S.C. § 1983, alleges that the County and the individual Defendants violated the Plaintiff's right to the free exercise of religion in violation of the First and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 160-63.) Count IV alleges that the County and individual Defendants violated Plaintiff's rights to free speech and assembly in violation of the First and Fourteenth Amendments. (*Id.* ¶¶ 164-170.) Count V alleges the County and individual Defendants violated the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 171-76.) Count VI seeks a declaratory judgment under Illinois law that Plaintiff is in compliance with the relevant zoning standards. (*Id.* ¶¶ 177-187.) Count VII seeks *de novo* legislative review of the County Board's decision. (*Id.* ¶¶ 188-190.) Count VIII seeks injunctive relief against the County to mandate compliance with its zoning standards and approval of the application. (*Id.* ¶¶ 191-94.) Count IX alleges that the County violated the substantial burden provision of the Illinois Religious Freedom Restoration Act, 775 ILCS 35/15. (*Id.* ¶¶ 195-202.) Count X alleges that the

---

[6] Again, Plaintiff does not offer a description of Act! for America. The organization's website explains that it is a national group founded "because Islamic militants have declared war on America." *See* http://www.actforamerica.org. Act! for America reportedly has eight local chapters in Illinois. http://www.actforamerica.org/index.php/local-chapters/find-a-local-chapter/12-states/90-illinois (visited March 28, 2011).

County violated the Free Exercise Clause of the Illinois Constitution, Article I, Section 3. (*Id.* ¶¶ 203-05.) Count XI alleges that the County violated the Free Speech and Assembly Clauses of the Illinois Constitution, Article I, Sections 4 and 5. (*Id.* ¶¶ 206-09.)

## DISCUSSION

Defendants have moved to dismiss Plaintiff's complaint in its entirety on *res judicata* grounds for failure to exhaust administrative remedies, or alternatively, to dismiss the individual counts for failure to state a claim upon which relief can be granted. Defendants also seek dismissal of the individual Defendants based on absolute, quasi-judicial immunity. Finally, Defendants ask the court to strike certain allegations from the complaint, to dismiss supplemental state-law claims, and to strike redundant claims.

## I.  Motion to Dismiss for Failure to Exhaust Administrative Remedies

Defendants first argue pursuant to Rule 12(b)(1) that the entire complaint should be dismissed for lack of subject-matter jurisdiction because Plaintiff failed to exhaust its administrative remedies as required by Illinois law. (Def.'s Br. at 3.) Defendants contend that the County Board's decision was an administrative decision subject to the Illinois Administrative Review Law, 735 ILCS 5/3-101, *et seq*; 55 ILCS 5/1-6007, and therefore became final 35 days after Plaintiff received formal service of that decision on January 15, 2010. (Def.'s Br at 4.) Plaintiff did not file for administrative review by February 19, 2010; accordingly, Defendants argue, its claims are barred. (*Id.* at 5.)

*Res judicata* would bar claims in this court if it would do so in an Illinois state court. *See Moore v. City of Asheville*, 396 F.3d 385, 391 (4th Cir. 2005) ("It is now established by federal common law that federal courts will apply *res judicata* to unreviewed determinations of state administrative agencies if the State itself would do so."). Plaintiff objects to the court's consideration of this matter; failure to exhaust administrative remedies is an affirmative defense and is ordinarily an inappropriate basis for a 12(b)(1) motion. *Mosely v. Board of Educ. of City of*

*Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). In some circumstances, however, "when an affirmative defense is disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion. . . . No purpose would be served by compelling the defendant to file an answer rather than proceed by motion when the plaintiff has pleaded the answer himself." *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). As both parties are in agreement as to the sequence of events, the court can reach the purely legal question at issue: whether Plaintiff has appealed the County Board's determination within the time frame mandated by Illinois law.

Resolution of this issue turns on which of two different statutory deadlines is relevant here. Defendants contend the 35-day deadline of the Illinois Administrative Review Law governs, and requires dismissal of this case. Plaintiff contends that a more recent enactment provides a 90-day period in which to challenge the County Board's zoning decision. Plaintiff notes that as of January 1, 2009, the Illinois Counties Code, applicable to DuPage County, contains a provision explaining that

> Any decision by the county board of any county, home rule or non-home rule, in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance shall be subject to *de novo* judicial review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes. Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision.

55 ILCS 5/5-12012.1(a). As Defendants here emphasize, however, another portion of the Illinois Counties Code also makes reference to judicial review of county board decisions, and provides that "[t]he decisions of the county board are subject to judicial review under the Administrative Review Law." 55 ILCS 5/1-6007. The Administrative Review Law itself contains the stricter 35-day deadline: "Every action to review a final administrative decision shall be commenced . . . within 35 days." 735 ILCS 5/3-103.

The quoted provisions are in apparent tension: Section 5/5-12012.1 sets a 90-day filing deadline, while the Administrative Review Law requires that actions challenging County Board

decisions be filed within 35 days. Defendants urge that these two provisions can and should be read in harmony, and that § 5/5-12012.1 "merely describes a standard to be applied by the court when reviewing a zoning decision made by a county board," while the Administrative Review Law "provides the necessary substantive and procedural due process safeguards that protect the interests of all parties involved." (Reply at 4-5.) Defendants argue that the Administrative Review Law applies to decisions "based upon the record created by an administrative hearing," and that § 5/5-12012.1(b) should be read in *pari materia* with that law. (Reply at 4.) Such an interpretation, Defendants contend, "is necessary to protect the procedural rights of all of the parties to the administrative proceeding." (*Id.* at 5.) The law does provide procedures, for example, for notifying adjoining property owners and intervenors of the pendency of an appeal from the county's zoning action. (*Id.* at 5; *See, e.g.*, 735 ILCS 5/3-107(c) ("The plaintiff shall send a notice of filing of the action by certified mail to each other person who appeared before and submitted oral testimony or written statements to the . . . zoning board of appeals with respect to the decision appealed from.")). Defendants are correct that there is no reason why the procedures set out by the Administrative Review Law are incompatible with the method of review prescribed in § 5/5-12012.1. The competing deadlines, however, do appear to be in direct conflict. Defendants do not address the purpose of § 5/5-12012.1(a)'s 90-day limitations period under their theory, except to assert that it does *not* apply to review of an administrative hearing. (Def.'s Br. at 4; Reply at 4-5.)

Two principles of statutory interpretation govern the court's resolution of this matter. First, "[w]here a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern." *Moore v. Green*, 219 Ill.2d 470, 479, 848 N.E.2d 1015, 1021 (2006). The provision that Defendants cite states more generally that county board decisions "are subject to judicial review under the Administrative Review Law," which itself includes the 35-day time limit Defendants urge. The provision containing the 90-day deadline, in contrast, refers specifically to "[a]ny decision by the

county board of any county, home rule or non-home rule, in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance." 55 ILCS 5/5-12012.1. Under the rules of statutory interpretation, this provision's specificity as to the type of decision to which it applies (i.e., zoning decisions) trumps the general applicability of the previous provision applicable to "the decisions of the county board."

Second, when conflicting provisions are passed at different times, "we will presume that the legislature intended the more recent statutory provision to control." *Moore*, 219 Ill.2d at 480, 848 N.E.2d at 1021. Here, the general provision applying to "the decisions of the county board" went into effect January 1, 1990. 55 ILCS 5/1-6007. The more specific provision applicable to zoning decisions became effective nineteen years later, on January 1, 2009. 55 ILCS 5/5-12012.1. Because the 90-day limit is supported by both of these canons of statutory interpretation, the court concludes that Plaintiff's action is timely and denies Defendant's motion to dismiss on this basis.[7]

## II.    Immunity

Defendants argue that the individual Defendants are shielded by quasi-judicial immunity, (Def.'s Br. at 5), or, alternatively, legislative immunity. (*Id.* at 8.) Plaintiff has named individual Defendants in Counts III, IV, and V: County Board Chairman Robert J. Schillerstrom; Zoning Board of Appeals Chairman Robert J. Kartholl, Jr.; Zoning Board of Appeals members John Hakim, Barry A. Ketter, Tom Laz, Michael Loftus, Jim McNamara, and Jack L. Murphy; and County Board members John Curran, Dirk Enger, Paul Fichtner, Rita Gonzalez, J.R. McBride, Michael McMahon, Debra Olson, Patrick O'Shea, Donald Puchalski, and Jim Zay. All of those named in their individual capacity voted against Plaintiff's application, except Schillerstrom (who did not vote).

---

[7]    Plaintiff has offered another argument against the *res judicata* defense—that because "[a]ll of the federal courts" to have addressed RLUIPA and religious discrimination claims in this context have "recognize[d] litigants' right to challenge a discriminatory decision to deny a permit [because] the claims addressed by the federal court are entirely different than the application considered by the agency." (Response at 4.) In light of the court's statutory construction, this other argument need not be addressed.

Defendants urge that the individual members of the County Board and Zoning Board of Appeals have quasi-judicial immunity from liability for the decisions Plaintiff challenges. "Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions." *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). In determining whether an actor enjoys such immunity, the court uses a "functional approach," determining whether "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Id.* (quoting *Forrester v. White*, 484 U.S. 219 (1988)).

Defendants point to a case in which the Third Circuit found quasi-judicial immunity applied to a zoning decision. In making this determination, that court asked three questions:

> First, does a Board Member, like a judge, perform a traditional 'adjudicatory' function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from political influence)? Second, does a Board Member, like a judge, decide cases sufficiently controversial that in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect [the parties'] constitutional rights?

*Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006) (quoting *Bettencourt v. Board of Registration*, 904 F.2d 772, 783 (1st Cir. 1990)). The *Dotzel* court considered whether a township Board of Supervisors should have been afforded immunity for their decision to deny a trucking business permission to open a gravel pit on its property. 438 F.3d at 322. Plaintiffs alleged that personal animus drove the decision, and that one board member's brother operated a competing gravel pit. *Id.* The court granted quasi-judicial immunity based on its analysis of these three factors. *Id.* at 327-28.

Another court in this district recently addressed the issue of whether members of a village board of trustees can be held individually liable for denial of a special use permit. That court decided that the trustees did not enjoy immunity in denying a special use permit for a strip club because their decisions lacked the type of searching review to which judicial decisions are subject.

13

*Chicago Joe's Tea Room LLC v. Village of Broadview*, No. 07 C 2680, 2009 WL 3824723, at *3 (N.D. Ill. Nov. 12, 2009). "[The trustees] are not required to give any rationale for a particular vote. Thus the Trustees' approval or denial of a special use permit is not reviewable in the same manner this court's decisions are, or even on the same basis as Illinois liquor commissioners, who must provide some reason for any adverse decision." *Id.* The court found this distinction significant because the Seventh Circuit had extended judicial immunity to liquor commissioners in *Reed v. Village of Shorewood*, 704 F.2d 943, 952 (7th Cir. 1983), in part based on the record that liquor commissioners are required to produce, which meant that "a liquor commissioner's mistakes—like a judge's—are 'remediable through the appellate process.'" *Chicago Joe's*, 2009 WL 3824723, at *3 (quoting *Reed*, 704 F.2d at 952).

*Chicago Joe's* is not binding on this court, and may in any event be distinguishable. First, as Defendants note, in the case before this court, the Zoning Board of Appeals and County Board were required by the Illinois Counties Code to make findings of fact.[8] (Def.'s Br. at 7.) In *Chicago Joe's*, the Village Planning and Zoning Board was similarly required to do so. 2009 WL 3824723, at *3. The Village Trustees, in contrast, who were stripped of immunity, were not required to do so, or to give any explanation for their vote. *Id.* Defendants point out that "[w]hen the county board adopts the [findings of fact and recommendation of the ZBA], it necessarily adopts the findings of fact transmitted by the [ZBA]." *Gallik v. County of Lake*, 335 Ill. App. 3d 325, 331, 781 N.E.2d 522, 527 (2d Dist. 2002). Accordingly, Defendants urge, if the *Chicago Joe's* decision rests on the finding that "the Trustees' approval or denial of a special use permit is not reviewable in the same

---

[8]     *See* 55 ILCS 5/5-12009.5(d):

The board of appeals shall report to the county board a finding of fact and a recommendation as to whether the county board should deny, grant, or grant subject to conditions the special use. The county board may, by ordinance and without a further public hearing, adopt any proposed special use on receiving the report or it may refer the proposal back to the board of appeals for further consideration.

manner this court's decisions are," this case is distinguishable; the County Board in this case had a clear record before it, which, in the absence of findings of fact of its own, it incorporated.

As a second basis for distinguishing *Chicago Joe's*, Defendants urge that the decision here is subject to review under the Illinois Administrative Review Law, while the decision of the Village Trustees in *Chicago Joe's* was subject only to *de novo* legislative review. (Def.'s Br. at 7.) Plaintiff counters that the Administrative Review Law does not apply to this decision because of the standard of review set out in 55 ILCS 5/5-12012.1. The court has already addressed the conflict between these statutes for the purposes of determining what timeline applies to an action for review of the County Board's decision. Specifically, the court held that 55 ILCS 5/5-12012.1 trumped 55 ILCS 5/1-6007 based on the canons that specificity trumps generality, and that a later enactment trumps an earlier one. Plaintiff urges that the court should reach a similar conclusion regarding the substantive law that governs review of Plaintiff's claims.

At least some case law supports Plaintiff's argument: *Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill. App. 3d 1003, 922 N.E.2d 1143 (2d Dist. 2009) noted that the 2009 amendments subjecting zoning decisions to *de novo* legislative review were made in *both* the Municipal Code and the Counties Code. 397 Ill. App. 3d at 1027, 922 N.E.2d at 1162. *Our Savior* concluded that *de novo* legislative review applied to municipal zoning decisions pursuant to 65 ILCS 5/11-13-25. *Id.* That section is identical to 55 ILCS 5/5-12012.1. Defendants note, however, that courts in two cases have found a relevant distinction between the Municipal Code and the Counties Code.[9] *See, e.g.*, *Ashley Libertyville, LLC v. Village of Libertyville*, 378 Ill. App. 3d 661, 666, 881

_____

[9] The provisions prescribing *de novo* review in the three cases discussed *supra* are substantially similar to the 2009 amendments, and thus these cases remain good law for purposes of this discussion. The Municipal Code provision, 65 ILCS 5/11-13-25, and the Counties Code provision, 55 ILCS 5/5-12012.1, both initially passed in July 2006, referred to the "adoption" of a zoning ordinance, which courts interpreted to mean only the approval or grant of an ordinance. *See Millineum Maintenance Management, Inc. v. County of Lake*, 384 Ill. App. 3d 638, 645, 894 N.E.2d 845, 854 (2d Dist. 2008). The 2009 amendment clarified that *de novo* review should apply to "any (continued...)

15

N.E.2d 962, 966 (2d Dist. 2008) (noting that the Counties Code "expressly adopts the Administrative Review Law" while the Municipal Code does not); *Chicago Title Land Trust Co. v. Board of Trustees of Barrington*, 376 Ill. App. 3d 494, 500, 878 N.E.2d 723, 728 (1st Dist. 2007) (explaining that the Administrative Review Law does not apply to actions taken by Village Trustees, but does apply to actions taken by a village's zoning board of appeals).

An Illinois Appellate Court has previously examined the relationship between these two statutes at length, including the legislative history, and concluded that the legislature did intend to remove county board decisions granting special use permits from the Administrative Review Law. *Millineum Maintenance*, 384 Ill. App. 3d at 650, 894 N.E.2d at 858. In reaching that conclusion, the court asked whether statutorily replacing that type of review with *de novo* legislative review would violate the Illinois Constitution's separation of powers provision. The court explained that

> the legislature has the full authority to remove certain administrative determinations from, or add certain administrative determinations to, the ambit of judicial review (which comes normally via the Administrative Review Law). Accordingly, to the extent section 5-12012.1 was intended to remove the listed zoning decisions from the purview of the Administrative Review Law, it does not offend separation of powers principles.

*Id. Millineum Maintenance* also concluded that, while legislative history suggested the original version of 5-12012.1 intended to remove denials *and* grants of special use permits from the Administrative Review Law, the plain language of the statute suggested that only special use grants were meant to be removed. *Id.* at 648, 894 N.E.2d at 856. In response to *Millineum Maintenance*, the legislature amended 5-12012.1 to clarify that both denials and grants should be subject to *de novo* legislative review, and exempt from the Administrative Review Law. *Our Savior*, 397 Ill. App. 3d at 1026, 922 N.E.2d at 1161. The legislature has taken no further action, and this court concludes, pursuant to the rationale in *Our Savior* and *Millineum Maintenance*, that the legislature

---

[9](...continued)
decision," including the denial of a conditional use permit.

did intend to remove review of special use decisions from the ambit of the Administrative Review Law.

The fact that zoning decisions are subject only to deferential review led the *Chicago Joe's* court to conclude that the Trustees who made such decisions do not enjoy immunity. 2009 WL 3824723, at *3. This court disagrees. *Millineum Maintenance* explained that the less searching standard of review applies only when the zoning decision at issue "does not affect a fundamental constitutional right." *Id.* Indeed, the language in 5-12012.1 confirms that "the principles of substantive and procedural due process [do] apply" to the court's review. 55 ILCS 5/5-12012.1(b).[10] Those principles call for a searching review of decisions challenged on constitutional grounds: "[T]he utilization of the [six-factor test set forth in *LaSalle Nat'l Bank v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65 (1957)] in an as-applied challenge prevents the irrational, unreasonable, and arbitrary application of a zoning ordinance to a particular property–the flip side of the rational basis test." *Napleton v. Village of Hinsdale*, 374 Ill. App. 3d 1098, 1109, 872 N.E.2d 23, 34 (2d Dist. 2007). In fact, "[i]n considering such a substantive due process challenge, the trial court is not limited to evidence adduced before the body that created the legislative enactment." *Millineum Maintenance*, 384 Ill. App. 3d at 643, 894 N.E.2d at 852. As Defendants here argue, because *LaSalle* review applies, "sufficient constitutional safeguards exist to justify applying quasi-judicial immunity in this case." (Def.'s Br. at 8.)

The court concludes that the individual Defendants are entitled to absolute quasi-judicial immunity based on the "functional" approach well-articulated by the *Dotzel* court. The duties the board performs–hearing evidence and making a decision based on that evidence—are adjudicatory in nature. The threat of retaliatory lawsuits against individual members is real, and could interfere with the functioning of the County Board and ZBA. The Zoning Board of Appeals is required to

_____

[10]     Although the parallel municipal statute examined in *Chicago Joe's* preserved the same type of review, that court did not examine the provision.

outline the reasoning for its decisions, which can be examined on review, and, though the County Board is not required to make its own findings, it does incorporate the findings of the ZBA. Further, the court is allowed to examine evidence outside of the record in conducting its review. Such review is not strictly limited to deferential *de novo* legislative review by § 5-12012.1; rather, that statute affirms that procedural and substantive due process protections attach. The court respectfully disagrees with the reasoning of *Chicago Joe's* and finds that absolute quasi-judicial immunity shields the County Board and Zoning Board of Appeals members.

### III.    Claims Against DuPage County Board Chairman Schillerstrom

Plaintiff alleges that County Board Chairman Schillerstrom is liable for violations of the Free Exercise Clause, the Free Speech and Assembly Clauses and the Equal Protection Clause. Plaintiff argues that "Schillerstrom was aware that zoning and County officials were targeting ILC in a discriminatory manner and imposing unlawful burdens on a religious institution[,] yet failed to exercise his authority to remedy the violations." (Response at 14.) The court concludes that Schillerstrom enjoys immunity for the reasons previously explained. In any event, Plaintiff's allegation that Schillerstrom "failed to exercise his authority" to curtail the constitutional violations does not appear to state a claim. Plaintiff relies on *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014 (7th Cir. 2003), for the proposition that, though § 1983 does not allow vicarious liability or respondeat superior, an individual may be liable if he "turn[s] a blind eye" to the conduct at issue. *Id.* at 1039. That case, however, explains that such personal responsibility may only attach if "the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (citation and quotation omitted). Plaintiff does not plead any specific facts as to Schillerstrom's conduct that suggest either willful ignorance of the alleged constitutional deprivation or an active role in it. Defendants' motion to dismiss Schillerstrom is granted.

**IV.     Counts I and V**

In Counts I and V, Plaintiff alleges that the decision to deny its request for a conditional use permit violates Plaintiff's rights under RLUIPA's equal-terms provision and the Equal Protection Clause of the Fourteenth Amendment.[11]  (Def.'s Br. at 9.)  RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).  The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Am. XIV, § 1.  The amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).   Defendants have moved to dismiss both of these counts.

**a.     RLUIPA Equal-Terms Challenge**

Defendants attack Plaintiff's RLUIPA equal-terms challenge on a number of grounds.  First, Defendants argue that Plaintiff does not allege that DuPage County's zoning ordinance treats religious and non-religious uses differently, and that the ordinance in fact does not.  The court does not read Plaintiff's complaint as including a facial challenge to the relevant zoning ordinance, and therefore will not address Defendants' arguments on this point.  Second, Defendants argue that the complaint is "legally deficient" because Plaintiff has not alleged that the use of the subject property is "integrally related" or "central" to Plaintiff's religious beliefs or practice.  (Def.'s Br. at 10.)  The citation Defendants provide in support of such a requirement, however, relates to a constitutional free exercise claim governed by *Employment Division v. Smith*, 494 U.S. 872 (1990), not to RLUIPA's equal-terms provision, and is thus inapplicable.  In fact, the Seventh Circuit has been clear that the equal-terms provision is violated "whenever religious land uses are treated worse than

---

[11]     Plaintiff also alleges a violation of RLUIPA's nondiscrimination provision, 42 U.S.C. § 2000cc(2)(b)(2), in Count I, but Defendants do not challenge that claim.

comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses." *Digrugilliers v. Consol. City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007).

Defendants' substantive challenge to Plaintiff's equal-terms claim requires more careful examination. To allege a violation of the equal-terms provision, Plaintiff must plausibly assert that "religious and secular land uses [have not been] . . . treated the same . . . from the standpoint of [an] accepted zoning criterion." *River of Life Kingdom Ministries v. Village of Hazel Crest*, 611 F.3d 367, 373 (7th Cir. 2010). For example, "[i]f a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision." *Id.* at 371. In another formulation, the Seventh Circuit explained that an equal-terms claim exists "whenever religious land uses are treated worse than comparable nonreligious ones." *Digrugilliers*, 506 F.3d at 616.

Plaintiff contends it has alleged a claim under this standard, urging that its application received less favorable treatment than did the Balkwill School. (Compl. ¶¶ 42-44, 149.) Defendants insist that Plaintiff is free to make use of the property in the same manner as the Balkwill School, and therefore cannot state an equal-terms claim. (Def.'s Br. at 11.) Plaintiff characterizes the additional uses it seeks–such as extended hours, expanded parking, and hosting religious services–as "substantially similar" to the Balkwill usage, and urges that its "proposed use satisfies the same conditional use standards set forth in the Zoning Ordinance in the same way that Balkwill was able to meet those standards." (Response at 6.) Moreover, Plaintiff points out, it "is not required to demonstrate an exact comparison, as such a mandate would defeat the purpose of the equal terms provision, when religious institutions could face nearly impossible burdens of finding a secular use that perfectly matched their rituals." (*Id.* at 7.) Finally, Plaintiff asserts that performing an effective comparison "requires detailed factual analysis more appropriate after discovery." (*Id.*)

The court agrees that at this stage in the litigation, Plaintiff is not required to provide a detailed comparison that establishes unequal treatment in comparison to a nonreligious user. Nor is the court satisfied by Defendants' argument that, so long as Plaintiff can use its property in precisely the same manner as Balkwill, there can be no equal-terms challenge. Certainly, if the county revoked a conditional use permit for a religious school that had been granted to a secular school, that would state an equal-terms claim. But RLUIPA does more than require that land use regulations contain "equal terms" for religious and non-religious uses; it requires that government "*treat[]* . . . religious assembl[ies] or institution[s] on . . . equal terms." 42 U.S.C. § 2000cc(b)(1) (emphasis added). Such equal treatment requires that a conditional use application from a religious institution, like Plaintiff, be given the same consideration and undergo the same review and approval process as would a conditional use application from a secular institution, like Balkwill. Plaintiff has alleged that it did not receive the same consideration. The showing Plaintiff must make to proceed at the motion to dismiss stage is not a significant one. *See, e.g., Hollywood Community Synagogue, Inc. v. City of Hollywood*, 430 F.Supp.2d 1296, 1320 (S.D. Fla. 2006) (holding, albeit pre-*Twombly*, that allegations that a city had "granted Special Exceptions to day care centers and educational facilities, while denying . . . a Special Exception [to a Synagogue], [t]hough . . . . cursory at best, . . . are sufficient to allege the required nonreligious assemblies or institutions for Plaintiffs' equal terms claims").

The facts Plaintiff presents in support of this allegation are minimal, but they do present a plausible claim that it was not treated on equal terms. The irregularities alleged suggest Plaintiff may be able to prove it did not receive the same consideration a similar secular institution would have received. For example: several individuals changed their votes with no intervening events aside from the allegations against Plaintiff (Compl. ¶¶ 128, 141); the CDC recommended approval of the site plan, but the ZBA did not even discuss the last set of conditions offered by Plaintiff, nor did they attempt to explain what conditions would lead to approval (*id.* ¶ 122); and testimony at the

December 7 ZBA meeting, the December 15 CDC meeting, and the January 12 County Board meeting related to Plaintiff's religious character–rather than issues regarding zoning criteria—took center stage. (*Id.* ¶¶ 123, 127, 132, 140.) Presuming the truth of these allegations, Plaintiffs may be able to demonstrate that a similarly-situated landowner would have been permitted to address concerns that its proposed use did not conform to the relevant zoning criteria, and to negotiate conditions that would ensure it met those criteria.

### b. Equal Protection Claim

Defendants also ask the court to dismiss Plaintiff's equal protection claim, which rests on the same facts discussed in Count I. The same facts that supported Plaintiff's equal-terms claim support the allegation that it has not been treated the same as the similarly-situated school. In addition, Plaintiff alleges that it has been treated differently by the county than non-Muslim religious institutions. For example, the ZBA's denial rested in part on its finding that Plaintiff had not "clearly demonstrated that the granting of the Conditional Use . . . will not be injurious to the neighborhood [or] detrimental to the public welfare." (Zoning Ordinance Z08-074A, Ex. A to Def.'s Br. [hereinafter "Irshad Zoning Ordinance"] at 6.) Plaintiff points out that "[e]very church, including the twenty-three (23) in unincorporated DuPage County, is adjacent to residential land uses. . . ." (Compl. ¶ 85.) Plaintiff also notes that there are five other religious institutions within a one-half mile radius of the property. (*Id.* ¶ 50.) Whether or not these institutions qualify as "similarly situated" to Plaintiff need not be determined at this stage. Plaintiff has adequately alleged an equal protection violation, and this claim survives Defendant's' motion to dismiss.

## IV. Counts II and IX

Defendants next move to dismiss Plaintiff's claims that a substantial burden has been imposed in violation of RLUIPA and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/15.

### a. RLUIPA Substantial Burden

RLUIPA's substantial burden provision provides that "[n]o government shall impose or

implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution," unless the government can show that it has done so to further a compelling governmental interest and that it has utilized the least restrictive means of doing so. 42 U.S.C. § 2000cc(a)(1). In order for government action to impose a substantial burden on religious exercise, such action must "bear[] direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009) (citation and quotation omitted). This does not mean, however, "that to satisfy this requirement the Church would have to show that there was no other parcel of land on which it could build its church." *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899 (7th Cir. 2005). In *Sts. Constantine and Helen*, the court concluded that the city had placed a "substantial burden" on the church in denying its zoning application even though "[t]he Church could have searched around for other parcels of land . . . , or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense. That the burden would not be insuperable would not make it insubstantial." *Id.* at 901.[12] Though the particular circumstances of *Sts. Constantine and Helen* differ from those alleged here,[13] it is significant that in that case, as in this one, the religious

---

[12]     Though the "substantial burden" provision could be read to favor religious uses over secular uses, in violation of the Establishment Clause, the Supreme Court has held it does not. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). The court explained, in evaluating a challenge to the "substantial burden" provision as applied to prisoners, that "there is room for play in the joints between the Free Exercise and the Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements, without offense to the Establishment Clause," but acknowledging that "accommodation must be measured so that it does not override other significant interests." *Id.* at 713-14, 722 (citation and quotation omitted). Defendants have not argued that applying the "substantial burden" provision as Plaintiff urges here would be unconstitutional.

[13]     In *Sts. Constantine and Helen*, the court reversed the district court's grant of summary judgment for the city. The lower court in that case appeared to have concluded from *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003) that, so long as plaintiff churches may build as of right in some zoning districts, local officials do not impose a

(continued...)

institution has alleged a willingness to meet the demands of both the professional planning staff and elected officials, but has seen its request rebuffed nonetheless. (*See, e.g.*, Compl. ¶ 105 ("the ILC revised its site plan many times [at significant expense] to accommodate all requests by County's zoning staff, the CDC, and other County Board members").)

Evidence that a religious organization "readily agreed to every mitigation measure suggested . . . but the County, without explanation, found such cooperation insufficient" supported the Ninth Circuit's conclusion that county officials imposed a substantial burden on a religious group. *See Guru Nanak Sikh Soc. v. County of Sutter*, 456 F.3d 978, 989 (9th Cir. 2006). That court went on to explain that in denying the application, the county's Board of Supervisors, "disregarded, without explanation" the county planning department's conclusion that, with certain mitigating conditions, the proposed temple would have a "less-than-significant impact on surrounding land uses." *Id.* at 991. In voting down the proposal, the Board did not explain why the proposed mitigating conditions were ineffective, nor did the Board propose alternatives. *Id.* The court concluded that "[b]ecause the County's actions have to a significantly great extent lessened the prospect of Guru Nanak being able to construct a temple in the future, the County has imposed a substantial burden on Guru Nanak's religious exercise." *Id.* at 992.

The Second Circuit made a similar observation, noting that a procedure allowing the religious institution to propose modified conditions would militate against the conclusion that regulations impose a substantial burden on religious exercise. *Westchester Day School v. Village of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007). In that case, the zoning board of appeals had

---

[13](...continued)
substantial burden by requiring them to seek permits in some other areas. *Sts. Constantine and Helen*, 396 F.3d at 899-900. The *Sts. Constantine and Helen* court distanced itself from that conclusion. Plaintiff in *Sts. Constantine and Helen* court complained not about having to apply for a zoning variance but about having to either sell land it owned or face significant delay. Notably, Defendants in the case before this court assert that there are areas of the county in which religious institutions are allowed as of right. (Def.'s Br. at 13.) This fact, if true, may be relevant to defense of Plaintiff's claim on the merits; it does not defeat Plaintiff's claim at the pleading stage.

rejected an Orthodox Jewish day school's proposal for an expansion that would enable it to serve the existing school population. The court found a substantial burden on religious exercise, in part because "the ZBA impermissibly based its decision on speculation about future expansion, without a basis in fact." *Id.* at 351. For example, the ZBA speculated that the plan included an expansion of the number of high school students, which raised traffic and pedestrian safety concerns, when in fact no high school expansion had been proposed. *Westchester Day School v. Village of Mamaroneck*, 417 F.Supp.2d 477, 538 (S.D.N.Y. 2006). In affirming the district court's findings, the Second Circuit observed that the ZBA exhibited an "arbitrary blindness to the facts." 504 F.3d at 352. Although the ZBA could have required the school to accept "conditions intended to mitigate adverse effects on public health, safely, and welfare, . . . the ZBA chose instead to deny the application in its entirety." *Id.*

Plaintiff alleges that neither the County Board nor the ZBA deliberated on the additional conditions Plaintiff accepted after the November 5 meeting. (Compl. ¶¶ 107-112, 122.) Plaintiff suggests it was willing to modify its proposal further in response to recommendations from county officials, County Board members, and ZBA members, but was not allowed the opportunity to do so. (*Id.*) Plaintiff alleges that the "delay, uncertainty, and expense" that have accompanied its efforts in seeking approval of its conditional use application impose a substantial burden. *Sts. Constantine and Helen*, 396 F.3d at 901 (holding that such factors may constitute a substantial burden). Importantly, the Seventh Circuit has described the "substantial burden" test as "an issue of fact" and noted that "substantiality is a relative term—whether a given burden is substantial depends on its magnitude in relation to the needs and resources of the religious organization in question." *World Outreach Conference Center v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009). Though *World Outreach* involved a substantially different scenario than that at issue here—plaintiffs there alleged that requiring them to appeal the denial of a special use permit would itself constitute a substantial burden—the *World Outreach* definition supports the court's conclusion that Plaintiff's substantial

burden claim should be allowed to proceed.

In reaching this conclusion, the court notes that the County Board's denial of the conditional use appears to rest in part on the speculative use of the property, and not the actual use for which Plaintiff applied. For example, the conditional use application limited occupancy to 100 worshipers, and Plaintiff "provided testimony and documentation" (specific references to that testimony and documentation are not included in the ZBA report) that attendance would be limited to 75 worshipers. The resolution nevertheless states that "the petitioner and objectors have submitted documentation and testimony to the file which appears to contradict petitioner's testimony as to the number of patrons using the facility, time of use and intensity of use." (Irshad Zoning Ordinance at 11.) Such speculation suggests arbitrariness on the part of the County Board and ZBA–after all, it is well within the power of the county to impose specific conditions upon which a conditional use permit is granted and to take enforcement actions if those conditions are not being met. *See* DuPage County Code 37-1413.10 ("The county board may establish such conditions and restrictions upon the . . . operation of the conditional use as is deemed necessary for the protection of the public interest."); 37-1417 (setting out procedures for addressing violations of a conditional use permit, including fines of up to $500 per day). Plaintiff's allegation that the County Board and ZBA did not consider the application as it was submitted, but rather speculated regarding future use suggests that, as in *Guru Nanak*, there is a question as to whether Plaintiff will ever "be[] able to construct a temple in the future." Plaintiff's allegation that it might never be able to meet the shifting criteria the County Board and ZBA seek to impose is sufficient to state a claim that the County has placed a substantial burden on Plaintiff's free exercise of religion.

### b.      Illinois Religious Freedom Restoration Act

The RFRA has an essentially identical provision to RLUIPA's substantial burden provision. 775 ILCS 35/15. "The Illinois law . . . [is] materially identical to section (a)(1) of the federal law, and so it need not be discussed separately." *World Outreach*, 591 F.3d at 533 (citations omitted).

Defendants offer no authority or arguments specific to this statute. The court concludes that because Plaintiff has stated a claim pursuant to RLUIPA's substantial burden provision, it has also done so under the parallel Illinois provision.

## VI.    Counts III and X

Defendants next move to dismiss Plaintiff's claims under the Free Exercise Clauses of the United States Constitution and the Illinois Constitution. The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." While "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability," *Employment Division v. Smith*, 494 U.S. at 879, "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). The government must not "regulate[] or prohibit[] conduct because it is undertaken for religious reasons," *id.* at 532, but may do so "in spite of" such beliefs. *Id.* at 540.

Plaintiff does not allege that DuPage County's zoning ordinances facially impede its free exercise of religion, but rather argues that by their conduct, the County Board and ZBA have done so. To Defendants' assertion that there is no allegation of any Muslim animus or prejudice (Def.'s Br. at 14), Plaintiff responds that "[b]y scrutinizing ILC's religious activities, irrationally relying on speculative uses rather than the actual application, and imposing limits not placed on any other religious institutions, Defendants targeted ILC in an unjustifiable manner." (Response at 11.)

Precisely what a plaintiff must prove in order to establish a free exercise violation in relation to zoning actions remains unsettled. In an oft-cited opinion, the Third Circuit explained that "when a religious plaintiff makes a Free Exercise challenge to a zoning regulation, it must explain in what way the inability to locate in the specific area affects its religious exercise." *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 274 (3d Cir. 2007) (noting agreement with the Fifth, Sixth, and Tenth Circuits on this standard, and partial agreement with the Ninth and

Eleventh Circuits).  The Seventh Circuit recently noted that "[i]f a state or local government deliberately discriminated against a religious organization (or against religion in general), it would be violating the free exercise clause even if the burden that the discrimination imposed on the plaintiff was not 'substantial' within the meaning of RLUIPA."  *World Outreach*, 591 F.3d at 534. The Seventh Circuit has explained, further, that even without a showing of deliberate discrimination, a religious organization can establish a violation of the Free Exercise Clause where it shows that "the government . . . [has placed] a substantial burden on the observation of a central religious belief or practice without first demonstrating that a compelling governmental interest justifies the burden." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007) (citations and quotations committed).

The court need not decide the precise standard that should apply in this situation.  Plaintiff alleges both that it has been "deliberately discriminated against" and, as explained previously, that the County's actions have placed a substantial burden upon it in terms of delay, expense, and uncertainty.  Plaintiff has also adequately pleaded facts supporting a free exercise claim:  The discussion both on- and off-the-record concerning Plaintiff's religious character and its potential affiliation with the Alavi Foundation and other groups are irrelevant to its application.  The ZBA and County Board were reluctant to discuss the additional conditions Plaintiff willingly agreed to, or to suggest additional conditions that could lead to the future success of a conditional use application. County Board and CDC members changed their votes with no intervening substantive changes in the application.  The ZBA speculated as to the future use of the site without consideration of the use proposed by Plaintiff.  Presuming, as the court must, that these facts are true, Plaintiff has adequately alleged that the County Board and ZBA acted to deny the application "because of" Plaintiff's religious affiliation, not "in spite of" it.  *Lukumi Babalu Aye,* 508 U.S. at  540.  Plaintiff states a claim on Count III.

Defendants agree that free exercise claims brought pursuant to the Illinois Constitution are

analyzed "using standards from federally-derived free exercise jurisprudence." *C.L.U.B. v. City of Chicago*, No. 94 C 6151, 1996 WL 89241, at *22 (N.D. Ill. Feb. 27, 1996) (collecting cases). The court concludes based on its analysis of Plaintiff's federal free exercise claim that Plaintiff has also stated a claim based on the Illinois Constitution's Free Exercise Clause.

## VII.  Counts IV and XI

The court turns, next, to Plaintiff's claim that Defendants have violated the Free Speech and Assembly Clauses of the United States Constitution, as applied to the states by the Fourteenth Amendment, and the similar provisions of the Illinois Constitution. Specifically, Plaintiff alleges that the rejection of the conditional use application has denied Plaintiff's "ability to engage in [ ] constitutionally protected speech" and "constitute[s] an unlawful infringement and burden" on its freedom of assembly. (Compl. ¶¶ 167-68.) Plaintiff alleges, further, that Defendants have violated essentially the same rights guaranteed by the Illinois Constitution. (*Id.* ¶¶ 207, 208.) Defendants argue that these claims should be dismissed because "Plaintiff is afforded the ability to use the Subject Property for speech and assembly in the same manner and to the same extent as its predecessor–the Balkwill [S]chool." (Def.'s Br. at 15-16.)

In this context, rights to free speech, assembly, and free exercise are considered together. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). The First Amendment right to freedom of association, however, is not abridged merely because a religious group cannot assemble at a particular location of property. "[T]he fact that the church's congregants cannot assemble at that precise location does not equate to a denial of assembly altogether." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th Cir. 2004). Unfortunately, Plaintiff devotes little attention in its response brief and complaint specifically to these

claims.[14]  The court concludes that Plaintiff has not adequately pleaded a denial of its rights to free speech and free assembly as guaranteed by the Constitution.  From what the complaint shows, Plaintiff and its members remain free to assemble and worship at the locations where they have been holding religious services, and to conduct educational activities at the subject property within the same parameters allowed the Balkwill School.

The court next examines whether Plaintiff has stated a claim under the Illinois Constitution. Courts have "analyze[d] claims under the federal and state constitutions together while keeping in mind that protection of these liberties under the Illinois Constitution is broader than that under the United States Constitution."  *C.L.U.B.*, 1996 WL 89241, at *25.  Still, the fact that the Illinois Constitution "may afford greater protection than the first amendment in some circumstances does not mean that greater protection is afforded in every context."  *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill.2d 390, 447, 865 N.E.2d 133, 169 (2006).  The court finds no authority, and Plaintiffs offer none, suggesting that in this context the Illinois Constitution affords greater protection than the United States Constitution.  Because it appears that Plaintiff maintains the right to associate and to assemble both at the subject property for educational purposes, and at other locations for religious purposes, the court finds that Plaintiff has failed to state a claim on Counts IV and XI, and those counts will be dismissed.

## VIII.    Count VIII

Defendant next asks the court to deny the injunctive relief requested in Count VIII.  (Def.'s Br. at 16.)  Plaintiff argues that doing so would be premature, as it has not requested a temporary restraining order in this case.  (Response at 14.)  The court agrees.  Though Plaintiff does include

---

[14]    The court notes that the Free Speech and Assembly Clauses are not necessarily applicable to the claims at issue here, which are more properly asserted pursuant to RLUIPA and the Free Exercise Clause.  "[C]ourts consistently analyze the constitutionality of zoning regulations . . . under the Free Exercise Clause, not the Free Speech Clause."  *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 163 (3d Cir. 2002).

a request for injunctive relief in its complaint, it has not filed a motion for a preliminary injunction or a temporary restraining order. *See Friends of Frederick Seig Grove #94 v. Sonoma County Water Agency*, 124 F.Supp.2d 1161, 1172 (N.D. Cal. 2000) ("While the Court may ultimately agree with the defendants that injunctive relief is inappropriate, it is by no means evident that the Court can reach such a determination on a motion to dismiss. Accordingly, the defendants' motion to dismiss the plaintiff's request for injunctive relief is denied as premature."); *American Council of Learned Societies v. MacMillan, Inc.*, No. 96 Civ. 4103 (JFK), 1996 WL 706911, at *4 (S.D.N.Y. Dec. 6, 1996). A motion to strike a claim for injunctive relief may, in some instances, be appropriate prior to the filing of a motion for such relief, but often not in cases that "deal with factual issues, a resolution of which warrant[s] full briefing and a hearing on preliminary injunction." *In re Bridgestone / Firestone, Inc. Tires Products Liability Litigation*, 153 F.Supp.2d 935, 940 (S.D. Ind. 2001).

The court concludes that Defendants' motion to dismiss the claim for injunctive relief is premature.

**IX.     Lack of Supplemental Jurisdiction Over Counts VI, VII, IX, X, and XI**

Defendants argue that because the federal law claims should be dismissed, the court lacks jurisdiction over supplemental state law claims. (Def.'s Br. at 17.) "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claim." *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). Because the court has not dismissed all of Plaintiff's federal law claims, the court retains supplemental jurisdiction over Plaintiff's state law claims as well.

**X.     Motion to Strike**

Finally, the court considers Defendant's motion to strike numerous paragraphs and claims from Plaintiff's complaint. (Def.'s Br. at 18.) Defendant asks the court to strike Paragraph 73

(noting the "open door" meetings with neighbors); Paragraph 84 (discussing whether DuPage County can impose a 10:30 p.m. end to worship services); Paragraph 85 (noting other religious uses in the area and their locations adjacent to residential properties); Paragraph 107 (listing the conditions discussed at the informal November 5 meeting); Paragraph 109 (recounting County Board member Michelassi's request that the County Board vote on those additional conditions); Paragraphs 114-120 (outlining facts concerning the Alavi Foundation and its relationship to Plaintiff's conditional use application); Paragraphs 123 and 127 (describing the testimony of individuals concerning the Alavi Foundation); Paragraphs 130-35 and 139-40 (detailing publicity and protests surrounding the Alavi-Irshad link prior to the final County Board vote); Paragraph 186 (repeating the allegation that the ZBA and County Board refused to consider the additional conditions from the November 5 meeting); and part of Paragraph 36 (describing the background of Irshad's members). Defendants argue these allegations should be stricken because "each contains allegations of immaterial, impertinent and, or, scandalous matters which have no bearing on this case." (*Id.*) In addition, Defendant asks the court to strike two state-law claims, Counts VI and VII, as redundant.

Rule 12(f) allows the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The court "has considerable discretion" in striking such material, *Delta Consulting Group, Inc. v. R. Randle Construction, Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009), and concludes, as explained here, that with the exception of one count, the motion to strike should be denied.

a.     **Motion to Strike Statements**

Defendants cite *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) for the proposition that "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Id.* at 1294. The court notes that *Heller* spoke in terms of striking affirmative defenses that the court found "meritless" and "nothing but bare bones conclusory

allegations." *Id.* at 1295. Defendants' contention that the allegations they seek to strike "clutter" the case in the same way as affirmative defenses ignores the distinction between these two—an affirmative defense requires effort toward resolution on the part of both parties and the court, while factual statements should be designed to inform the court's resolution of other claims. Notably, Defendants' motion itself demonstrates that they are able to comprehend and respond to the allegations at issue. *Cf. Cumis Ins. Soc., Inc. v. Peters*, 983 F.Supp. 787, 798 (N.D. Ill. 1997) (motion to strike is appropriate "where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party").

Defendants cite *Anderson v. Board of Educ. of Chicago*, 169 F.Supp.2d 864 (N.D. Ill. 2001), which explains that the "court will not strike a matter from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation . . . [and] unless the moving party is prejudiced." *Id.* at 867-68. Defendants suggest that stringent test is met because the county's zoning ordinances prohibit the County Board and ZBA members from weighing off-the-record comments, such as those alleged in the complaint. (Def.'s Br. at 19.) But this is an argument *against* striking the allegations at issue: Plaintiff has alleged that County Board and ZBA members did take into account statements they should not have considered. These statements are relevant to Plaintiff's claims, and the fact that Plaintiff has not alleged specifics demonstrating that these statements influenced the County Board or ZBA does not support striking the allegations altogether. To the extent Defendants have legitimate concerns that such statements might lead to "unnecessary and burdensome discovery," they remain free to lodge appropriate objections during the discovery process. In addition, fears that the jury will confuse "informal proceeding[s]" with on-the-record hearings can be addressed, should the need arise, as the litigation continues.

Plaintiff's allegations in Paragraphs 84 and 85 about conditions that were not imposed, but may have been *ultra vires*, speak directly to the issue of disparate treatment, and will not be stricken. Nor is the court inclined to strike allegations regarding the County Board's failure to

consider additional conditions; these statements, too, plainly relate to the allegations of disparate treatment, in that Plaintiff alleges that the Board would have considered additional conditions proposed by or for other applicants.

Finally, Defendants object to the last two sentences of Paragraph 36, which describe many of ILC's members as "immigrants who came to the United States seeking political liberty, religious freedom, and economic opportunity." (Compl. ¶ 36.) Defendants believe these statements "dramatically open up discovery by putting the personal histories of the Plaintiff's 75 members at issue." (Def.'s Br. at 21.) The court does not share this concern; the gist of Plaintiff's claims are that, for purposes of a zoning decision, the origin and religion of its members ought not be taken into account. The information about Plaintiff's members is not strictly relevant to the narrow legal issues at hand, but neither is it confusing or prejudicial. The court declines to strike this statement.

**b.      Motion to Strike Claims**

Defendants next argue that Counts VI and VII are redundant and should be consolidated into a single count. (Def.'s Br. at 21.) Count VI seeks a declaratory judgment that Plaintiff has complied with zoning standards. (Compl. ¶¶ 177-87.) Count VII seeks *de novo* legislative review of the zoning decision pursuant to 55 ILCS 5/5-12012.1. (*Id.* ¶¶ 188-90.)

Plaintiff contends that it included both counts "for the sake of clarity." (Response at 14.) Count VI invokes the standard of review set forth in *City of Chicago Heights v. Living Word Outreach Full Gospel Church and Ministries, Inc.*, 196 Ill.2d 1, 21, 749 N.E.2d 916, 929 (2001), which evaluated a zoning decision both as an administrative action and a legislative act. As discussed earlier, it is now clear that the court's review of the zoning action is governed by 55 ILCS 5/5-12012.1. The court cannot be bound by the Illinois legislature's characterization of a particular action as legislative, administrative, or judicial. Nonetheless, as the Illinois Counties Code affirms that "the principles of substantive and procedural due process" apply, the court is satisfied that the statute identifies the appropriate standard of review. That clause references the six-factor *LaSalle*

34

test mentioned above. *See Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F.Supp.2d 961, 994 (N.D. Ill. 2003).

Because the court finds that Count VII sets out the appropriate standard of review for the zoning decision at issue here, Count VI is redundant and will be dismissed without prejudice.

## CONCLUSION

The court grants Defendants' motion to dismiss all claims against individual Defendants [34], including Defendant Schillerstrom, County Board members, and Zoning Board of Appeals members. The court also grants Defendants' motion to dismiss Counts IV and XI. Defendants' motion to dismiss is denied as to all remaining claims. Defendants' motion to strike is denied, except as to Count VI.

ENTER:

Dated:        March 28, 2011        _____
                                    REBECCA R. PALLMEYER
                                    United States District Judge